Pearson, J.
 

 The bill alleges, that the plaintiff and defendant had been copartners as merchants, for many years and the copartnership being dissolved, the prayer is for an
 
 *103
 
 account. The bill further, by way of anticipating the de-fence, admits, that the matters in controversy had been referred to arbitration, and an award made in favor of the defendant for a large sum : and to impeach the award, it is alleged, first.- The abitrators made many gross mistakes to the prejudice of the plaintiff: one,
 
 ex. gr.
 
 in this: The plaintiff had entered a charge against himself of $1000: this entry he had erased and made the charge against himself in another part of the book. The arbitrators re-instated the first entry without charging off the second entry : and so in the award the plaintiff is charged twice for the same sum of $1000. Another
 
 ex. gr.
 
 in this — the account was stated between
 
 the firm
 
 and the defendant, exhibiting a balance due due by the firm to. the defendant of $4000 : yet, the arbitrators by mistake, treated it as an account between the plaintiff and defendant and awarded that the plaintiff should pay to the defendant the whole sum of $4800 : whereas, the plaintiff ought only to have been charged with one half of the said balance against the
 
 “the firm.” Second:
 
 The books were kept by double entry, with which method of book-keeeping the arbitrators were not conversant — that one Cargill, who. was an expert book-keeper and had been the clerk of the parties and understood all of the entries — had been in the employment of the defendant after the dissolution, and at his instance, appeared before the arbitrators and remained with them, while they were making up the award, after the parties had withdrawn, without the plaintiff’s consent: and the charge is, that Cargill either wilfully deceived and misled the arbitrators, or by fraudulent concealment permitted them to fall into the many gross mistakes complained of.
 

 The defendant pleads the award in bar of the plaintiff’s equity for an account, and supports his plea by negative averments of the matters charged to impeach the a
 
 *104
 
 ward; and, by an answer, in which he denies that the arbitrators committed the mistakes alleged, so far as he has any knowledge, and avers, that if there be mistakes, to the prejudice of the plaintiff, there are also mistakes to his prejudice : and these mistakes against both make the result as accurate as could be expected, in the in vestigation of a long and very intricate account.
 
 As
 
 to the alleged mistake in charging the plaintiff with the whole balance against
 
 the firm,
 
 he supposes the charge was so made, not by mistake, but because the arbitrators were satisfied, that he had been grossly negligent in managing the affairs of the firm. In reference to Cargil, he admits he was.an expert book-keeper, well acquainted with the books of the firm and was m his emplot'ment and appeared before the arbitrator at his instance.— But he denies that he remained with the arbitrators after the parties had withdrawn, “ without the plaintiff’s con-senton the contrary, he avers, that he so remained, by the consent of both parties, to explain the books if it became necessary and to write for the arbitrators.
 

 The plea was set down for argument and is now before ns, upon the question thereby raised.
 

 The first question is upon the form of the plea, and the manner in which it is supported by the negative averments, and the answer : The truth of the plea and its sufficiency, if well pleaded, being admitted by the bill, unless it can be avoided by matter relied on to impeach the award. We see no defect in the form of the plea, or of the negative a-verments and answer by which it is supported.
 

 The next question is as to the sufficiency of the matters relied on in the bill to avoid the plea by impeaching the award, upon which it rests.
 

 First
 
 — a mistake committed by an arbitrator, is not of
 
 itself
 
 sufficient ground to set aside the award. If an arbitrator makes a mistake, either as to law or fact, it is the
 
 *105
 
 misfortune of the party, and there is no help for it. There is no right of appeal, and this Court has no power to revise the decisions of “judges, who are of the parties own choosing.” An award is intended to settle the matter in controversy and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens ihe door for coming into Court in almost every case: for in nine cases out of ten, some mistake, either of law or fact, may be suggested by the dissatisfied party. Thus the object of the reference would be defeated and arbitration, instead of ending, would tend to increase and encourage litigation.
 

 In the earlier cases, the Court yielding to “particular hardships,” assumed jurisdiction to set aside awards for mistakes. The inconvenience was soon felt, and it was found, that if a mistake was ground for setting aside an award, no award could stand, “ it was labor lost,” and litigation was commenced with more excited feelings. To remedy this inconvenience and put a restraint upon the jurisdiction, in some few of the old cases, a middle course was adopted, and in analogy to the practice of taking exceptions to an account of the clerk and master, and of surcharging and falsifying an account stated, the award was permitted to stand, except as to particular items, in which a mistake was shown, and these were referred back to the arbitrators to be corrected. In adopting this middle comise many difficulties had to be encountered. The arbitrators, after their award,
 
 were fundi officio ;
 
 some of them might have died, or might refuse to act. The particular difficulties arose out of the fact, that arbitaators were not bound to assign any reasons, or to set out any account,
 
 Patton
 
 v.
 
 Baird
 
 7 Ired. Eq. 260; so that, to enable a party to except to particular items, or to surcharge or falsify, on the ground of mistake, it was necessary to make the arbitrators par
 
 *106
 
 ties defendant, to compel a discovery, and then it was in* consistent to refer the matter back to them for correction. When, as in the present case, the award was pleaded in bar of an account, and matter of impeachment was rel ied on to avoid the plea, this middle course was-wholly impracticable. This mode of restraining the jurisdiction to set aside awards for mistakes was thereiore abandoned.
 

 The next attempt at restraint, was the adoption of the rule, that to set aside an award, the mistake must be a
 
 plain one,
 
 and there are many cases going on the distinction between a mistake and a
 
 plain
 
 mistake. The distinction was not easily defined, and was found impracticable. So this restraint was abandoned. It was then attempted to put a restriction upon this very inconvenient jurisdiction, by holding, that a mistake, however
 
 clear
 
 and
 
 plain,
 
 was no ground to set aside an award, unless the arbitrators were satisfied they had made a mistake, and filed an affidavit of the fact. There is an obvious objection to this doctrine ; it makes the right of relief depend not on the mistake, but on the fact, that the arbitrators have intelligence enough to see it when pointed out, and frankness enough to admit it; whereas, if there be a mistake, and this, under any circumstances, is a ground for relief, it is difficult to perceive a reason for refusing it, because it so happens, that the arbitrators are too dull to comprehend or too dis-engenuous to admit their mistake. This, so far from being a ground tor refusing relief, would seem to be a good reason to induce the Court to interfere, because it furnishes an inference that the arbitrators are totally unfit or dishonest, or both unfit and dishonest.
 

 These attempted restrictions prove clearly a desire on the part of the Courts to get rid of the jurisdiction, and the modern decisions in England repudiate the rigid of the Courts of law or equity to interfere and set aside an award,
 
 *107
 
 simply because of a matter of mistake in a matter of law or of fact. In a late case,
 
 Hill v Hind,
 
 2 M. & G. 847, 40 E. C. L. Rep. 656, where there were two gross mistakes, and the arbitrators filed ail affidavit admitting them, the Court does not put the decision, setting aside the award, on the ground of mistake, or make any allusion to the affidavit of the arbitrator's; but put it on the ground of
 
 misconduct,
 
 and hold, that such gross mistakes of the arbitrators was evidence of legal misconduct, and in efiect abandoned the old doctrine of a right to interfere, simply on the ground of mistake. In a case still later,
 
 Phillips
 
 v
 
 Evans,
 
 12 M. and W. 309, the Court of Exchequer expresses dissatisfaction with the decision in the case of
 
 Hall
 
 v
 
 Hind,
 
 and holds that a mistake, however gross or clear, (as an omission to take into the account and give the plaintiff credit for a large sum, which was
 
 admitted by the defendant to be due,)
 
 did not of itself furnish a ground for setting aside an award: although the arbitrator admitted the mistake, and wished the case referred back, so that he might correct it. We fully concur in this decision, and believe the law is settled by it, on sound reasoning. Russell on the power and duty of arbitrators, 53, Law Library 239, 245. *
 

 Second,
 
 Corruption or partiality are admitted grounds for setting aside an award, and so is a mistake, into which the arbitrators have been led by undue means: or into which they have been permitted to fall by the
 
 fraudulent concealment
 
 of a party or his agent.
 
 Metcalf
 
 v
 
 Ives,
 
 1 Atkins, 63; Russel on the power and duty of Arbitrators, 53, L. Lib. new series, 636. A Court of Equity does not, in such cases, correct an award, or revise the decision of the arbitrators; but holds it to be against conscience to take advantage of the award, in seeking to enforce it, or by using it as a plea in bar of a bill for an account.
 

 If, therefore, the plaintiff can establish the fact that Car-
 
 *108
 
 gill, the agent of the defendant, remained with the arbitrators after the parties had retired, “
 
 with out the plaintiff's
 
 consentor if he can establish the fact, that the arbitrators have made a mistake in consequence of fraudulent concealment on the part of Cargill, or of a wiiful omission to explain the entries, when he saw that the arbitrators did not understand them, supposing him to have remained with the plaintiff’s consent, (for, in that event, he will be presumed to have undertaken to act as the agent of both parties,) the award ought not to stand as a bar, and the plaintiff will be entitled to have the account taken in the same way as if there had never been an award.
 

 The remaining question, is as to the proper order, for the purpose of giving the plaintiff an opportunity to prove his allegations, without, in the meantime, prejudicing the bar set up by the plea.
 

 If the plea be overruled, the defendant must answer and make a full discovery as to the partnership accounts, which by his plea, he seeks to avoid. If the plea be sustained, the plaintiff must reply, and his replication will only put in issue the fact
 
 affirmed
 
 by the plea, to wit, the existence of the award, which is admitted by the bill.
 

 If the plea is' overruled, but is allowed to stand for an answer, with leave to except, the plaintiff can have no ground of exception; for it has been declared, that the plea is found and is duly supported by the negative aver-ments and the answer; so the plaintiff would be forced into the investigation of.the accounts., without the benefit of a discovery in reference to the accounts, which, in a case where the defendant has been the acting partner, might be very important.
 

 We think the plea ought neither to be sustained nor overruled, but be kept in suspense until the parties can be heard upon the proofs in reference to the matter alleged
 
 *109
 
 to impeach the award. If the matter be proven, then the plea will be overruled and the defendant required to answer as to the co-partnership dealings. If it be not proven, the plea will be sustained and the bill dismissed. The benefit of-the plea should be saved until the hearing.
 

 The plea, in this case, is what is termed an “ anomalous plea.3' It sets up the award in bar- of the plaintiff’s right to ^n account, and negatives the allegations relied on in the bill to impeach the award, and is supported by an answer making a discovery in reference to those allegations.
 

 The propriety of the order will be more apparent by adverting to the mode of pleading, formerly in use. Suppose the bill simply alleged the copartnership and prayed for an account, the award is pleaded in bar, a special replication is put in, confessing and avoiding the allegations to impeach the award — the replication is set down for argument — it js held, that one of the allegations is sufficient — the defendant rejoins to this allegation, arjd .the parties proceed to proofs: If the plaintiff fails to establish the allegation the bill is dismissed -: Ii he succeeds, the defendant is required to answer as to the matters of account, and the partnership dealings. This was tfie old mode. The plaintiff then labored under this disadvantage : upon the issue made by the rejoinder, he was without the benefit of a discovery. To give the plaintiff this benefit, the present mode was adopted: and the bill anticipating the defence sets out the matters relied on to avoid the plea, or brings them forward by an arqended bill, and in this way obtains an answer and discovery from the
 
 defendant
 
 — •Mitford’s
 
 Pleadings, Lube’s Ple.adings.
 

 In tfiis opinion Judge Nash concurred.
 

 Ruffin, C, J.
 

 A considerable part of the discussion at the fear- turned upon the sufficiency of some of the grounds
 
 *110
 
 alleged in the bill, in themselves, to impeach the award.— ■ But that vas premature. It may, perhaps, be true, that in ■some-of‘the particulars the bill does not allege 'sufficient; -evidence of -the mistakes of the arbitrators to enable the Court to give relief; as to them, by either setting the award ■aside orcorrectingit. But that-is not
 
 to be
 
 passed on now-: >for, that would be in effect to decide the cause as upon de-murrer or on the hearing, while the point is, simply, on the sufficiency of the plea to preclude the plaintiff from going into proofs of the circumstances of the alleged partiality or misconduct of the arbitrators, or their mistakes: 4hat is, whether.it be sufficient, or whether, either in form or ■substance, it be insufficient, to the discovery and relief the bill seeks. In a case involving such a -variety of circumstan-ces, it seems difficult to frame a,plea that would-meet the .allegations fully and also serve the-usual purposes of a plea: •for, in-such a case, upon replication to the plea, the proof to avoid and to support the award must be as much at .large as it would be on the hearing after an answer, denying the matter alleged in avoidance. This plea, however, .seems clearly to be defective, in that it is not a perfect de-fence to all parts of the bill to which it applies. It alleges the submission and award to include all accounts-between •the parties, whether as individuals, or in company in the ¡several partnerships and contracts mentioned in the bill-: .and the bar it sets up is to any discovery or'relief-in respect of any of those accounts and dealings. Now,-the bill seeks a general account and settlement of thepartnei’ships-: and, anticipating that the aw-ard, as well as-the adjustment between the parties constituted by the plaintiff’s.giving his ■note to the defendant, as for a balaxrce due from the plain‘■tiff on the footing of their partnei-ship and other dealing, might be set up in bar, the bill charges divers matters in avoidance and destruction of those bars. With those touch
 
 *111
 
 ing the note there is, now,.nothing to do, so it is not at all the subject of the plea. But in relation to the award, by itself, there are various grounds of impeachment,, which are stated in the bill with more-of'less distinctness. The plea assumes, that the bill meant; as-oiieo'f the-grounds, to ira* peach it for corruption,1 ’-fraud, partiálity, and misbehavior of the arbitrators: and -therefore 'the plea denies, that there was-any .corruption, fraud,-partiality, or misbehavior, on the part of the arbitrators, or either of them in making the award, or in any part of the proceeding- in. the premises, with, however, this important qualification — “ so far as. this defendant hath any knowledge,, information,, or belief.”— Now, although the award may be pleaded to a bill impeaching- it in anticipation of its being relied on as a bar, yet it must be pleaded with averments, which deny the grounds charged as equities in avoidance of the bar, and those aver-ments must be supported by a full answer to the particular facts of fraud or other misbehavior of the arbitrators.—
 
 Mitf. Pl.
 
 219, 244, 260,
 
 Foley
 
 v.
 
 Hill
 
 2, M. & C., 475. It is manifest, when the bill states the award,, that, unless the plea meet the'matter, charged in avoidance,, by a dL-rect denial, there is nothing in issue: and the very purpose of requiring, bills to charge such matter in avoidance, instead of putting in on, the record by a special replication, as was formerly the course, would be defeated. The fact of partiality or other misbehavior- in the arbitrator;is, therefore, the only point that can be put in issue, and if the plea does not put that in issue, it does not meet the bill. Mitf. 240. In this case, besides other improprieties charged or intimated against the arbitrators, the bill states that one Cargill- was thoroughly acquainted with, the books and accounts and was the clerk and agent of the defendant to conduct his case before the arbitrators : and that, after hearing. the allegations of the parties and the evidence oiler-
 
 *112
 
 ed by them, the parties were directed to withdraw, that the arbitrators might confei’ together and make up their judgment : and that, after the parties had withdrawn, and without the consent or knowledge of the plaintiff', Cargill was allowed by the arbitrators, to remain in conference with them, and to make to them false suggestions, statements and explanations of the books and accounts, which influenced the minds of the arbitrators, and induced them to make the award against the plaintiff and in favor of the defendant, otherwise than it would have been but for the interference of Cargill. Such conduct in arbitrators is ah irregularity and misbehavior, which vitiates an award.
 
 Walker
 
 v Frobisher, 6 Ves. 70;
 
 Pierce
 
 v
 
 Perkins, 2
 
 Dev. Eq. 250. It is not at all material, that the award has done justice, or that the party relying on the award, did not procure, or was not cognizant of, the misbehavior. It is in itself a wrong thing in the arbitrators, which avoids what they did. It is true, the plea contains an averment in general terms, in denial of the misbehavior of the arbitrators, and it may be, that would have been sufficient without any particular reference to the agency of Cargill, if the plea had stopped there, since, in support of the plea, the answer would supply the deficiency in .omitting such inference, and the issue made by the plea would be on the alleged misbehavior. But, however that might be, it is manifest, that the qualification, as to the defendant’s privity or belief in the misconduct, essentially varies the issue, and does not meet that part of the bill, either as to its facts or its equity.
 

 The bill also charges several mistakes in computation, and in charging the plaintiff twice with the same sums in certain schedules and accounts, stated in the bill to have been delivered with,- and to be parts of, the award, and in other particulars; and on that ground, also, the award is
 
 *113
 
 impeached. In relation to those matters, the plea says nothing particularly, nor, indeed, anything whatever, unless it be in the concluding averment,
 
 “
 
 that all the particulars so awarded, (so far as concerns the plaintiff) are fair and just.” Taking those mistakes to be unnoticed in the plea, they are, of course, to be considered as admitted, that is, for the purpose of the plea. But, taking the concluding averment to embrace them, still the plea, cannot be allowed. For, the plaintiff has, certainly, the right to counter-plead it, by relying on any admissions in the answer in avoidance of the defence set up in the plea; and here the answer admits, expressly, several of the mistakes to be truly charged in the bill, and to have been discovered by the arbitrators themselves, and by them communicated to him. It is true, the answer likewise states, that the arbitrators discovered also, and informed the defendant of similar mistakes on the other side, to a greater amount. But that only goes to the extent of the corrections, which ought to be made in the award, and is the more conclusive, that it ought hot to stand, in its present form, as a bar to the plaintiff’s suit, which is the point now under consideration. My brethren, indeed, think, that mistakes are not grounds for setting aside or correcting awards. I agree, that on a general submission, arbitrators are not bound to decide according to law, and, therefore, a mistake of the law is not material, unless it appear they meant to decide according to law, and missed it. So, also, it is true, that a mistake in judgment as to any matter of fact, cannot be corrected; for, the parties referred the matter to the judgment of the arbitrators, and must abide by it. But I have always understood it to be settled law, that it was one of the jurisdictions of the Court of Equity to take cognizance of mistakes in awards. It is to be noticed, that it is not now a subject of enquiry, how the party is to show there was a mistake, or the extent
 
 *114
 
 of it. He may be under great difficulty in giving satisfactory evidence on that point, when the case reaches that stage, as it is hard, except by the arbitrator himself, to show that the result was not arrived at by an erroneous judgment, rather than by a mere mistake in computation, or by making a double charge, or giving a double credit, or the like. But that is not the question. It is, oh the other hand, whether a mistake in an arbitrator, when duly established, or when, as here, actually admitted, be not a ground for relief in equity. The jurisdiction is stated in the text writers, as being one of those which is perfectly established in the Court of Equity, and has been, in very many instances,, acted on in adjudications. Without multiplying references, it may be mentioned, that the cases are collected, and the xules of the Court well digested, in the late Doctor Story’s Equity Jurisprudence, s. 1453, 1456; and it seems impossible, that a Court of conscience should not hold it to be against conscience, for one to insist on an advantage from what he, himself, on his oath, admits to have been a. misr take. It is true, that, in some modern cases at law, it has been held, that mistakes of arbitrators, not amounting to misbehavior, will not be enquired into. That may be, perhaps, because those Courts cannot bring the parties to their oaths, and because they can only enforce or annul an award, as a whole, and not correct it simply. But, whatever may be the reasons of those new rules in the Courts of law, there has been no case, as yet, in equity, repudiating, this ancient head of jurisdiction in Courts of Equity. Then, unless the mistakes go to the whole principle of the-award, it is not set aside or declared void, as in cases of fraud or misbehavior, which render it vicious in toto. But it seems agreed, that for mere mistakés in particular items, an award is only affected
 
 pro tanto,
 
 and may be put right by the Court, correcting them, or referring it back to the arbitrator,
 
 *115
 
 if made under a rule of the Court.
 
 Champion
 
 v
 
 Wenham,
 
 Ambler 245:
 
 Rogers v
 
 Dalimore, 6 Taunt, 111.
 
 Kleine
 
 v
 
 Catara, 2
 
 Gallison, 61. I conclude, therefore, that the plea is bad, and ought to have been overruled with costs : leaving the defendant, of course, at liberty to insist in his answer on such parts of the matter of the plea as will be available to him to him in that form.
 

 Per CuRiam, Decreed accordingly.